**Edwart QARI, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**

No. 03–1741.

United States Court of Appeals, Seventh Circuit.

Argued March 2, 2004.

Decided April 22, 2004.

Marisa C. Petrella, Petrella & Associates, Southfield, MI, for Petitioner.

George P. Katsivalis, Department Of Homeland Security, Office of the District Counsel, Chicago, IL, Jennifer Paisner, Department of Justice, Washington, DC, for Respondent.

Before CUDAHY, RIPPLE, and DIANE P. WOOD, Circuit Judges.

## ORDER

Albanian citizen Edwart Qari attempted to enter the United States in November 1998 with a false passport. He conceded removability, but subsequently applied for asylum based on political persecution. The Immigration Judge (IJ) denied his application, discrediting Mr. Qari's testimony that there was a political basis for his alleged persecution. The Board of Immigration Appeals (BIA) affirmed without opinion. We now deny Mr. Qari's petition for review.

### BACKGROUND

Mr. Qari arrived at O'Hare International Airport from Albania on November 12, 1998, and was detained by INS officers who determined that he was attempting to enter the United States with a fraudulent passport. An INS officer, with the help of an interpreter, interviewed Mr. Qari. During the interview, Mr. Qari explained that "the Mafia" had extorted money from him, and that if he had not closed the store that he owned and left Albania they would have killed him. When asked if the Mafia had any connection to the government, he answered "[b]eing that the government is not doing anything how do I know. The government is doing nothing to help me out." When asked whether he had ever been threatened or abused by members of the government, he said that he had, stating further that "[t]he Albanian government is

asking why the store is going this way and why I am paying no taxes." Mr. Qari then clarified that he had in fact paid taxes, and that he left Albania not because he owed taxes but because "the people are coming asking for more and more."

Two and a half months later Mr. Qari applied for asylum, claiming that the government had persecuted him because of his political opinion. Along with his application he submitted a personal statement, alleging that after "the communists came back into power" in 1997, the local village government targeted him because of his membership in the Republican Party. He stated that he joined the party in 1990 as a young teenager and became increasingly active in 1997 and 1998, when he participated in numerous demonstrations against the government.

In 1998, his statement continues, local officials retaliated against him for his role in the political demonstrations by stealing from his store, which they threatened to close if he did not produce certain unspecified "papers." These threats were followed by a visit from members of a so-called "mafia" with "ties to the local village government" who came to the store and extorted money from him at gunpoint. These men returned a second time, and when he did not produce more money, they "punched [him] in the face and began kicking [him]" and told him "that the police would not help [him] because they had the right connections." He determined that he could no longer keep the store open and sold it at the end of September 1998.

Also in September 1998, Mr. Qari stated, he "was called by the police and threatened with jail" if he continued "to participate in the activities of the opposition parties." The following month "he was chased by the police and shot at" because he "helped to organize counteraction by

the Democratic Party" to a government celebration of a former communist dictator. To escape further persecution, he asserted, he fled to Tirana, Albania's capital, and hid until he could make arrangements to leave for the United States.

At the hearing before the IJ, Mr. Qari provided more details about the men who extorted money from him, testifying that he recognized one of them as the brother of the "secretary of the party for the village," and adding that he could not report the men to local government officials, who were all "their people." He testified that he did report the extortion and threats to the leaders of the Republican Party in the nearby city of Korca, but party leaders told him to "forget about this, because nobody can do anything." He also clarified that he had joined the Republican Party in "either '96 or '97," rather than in 1990 as earlier claimed in his asylum application. At the conclusion of the hearing, the IJ asked Mr. Qari why he did not mention during his INS interview any of his political activities or any mistreatment he suffered at the hands of the police or local government. Mr. Qari responded that he did not give complete answers at that time because he was "in shock."

In his ruling, the IJ found not credible Mr. Qari's testimony that there was a political motivation behind the alleged mistreatment. The IJ supported his finding with several reasons: during his initial INS interview at O'Hare, Mr. Qari did not mention any political motivation behind the acts; Mr. Qari failed to bring his father—who had lived with him in Albania until 1996—to corroborate his testimony that he was active in the Republican Party; as for the date when he joined the Republican party, there were inconsistencies in his application, testimony, and party membership documents; and Mr. Qari's portrayal of the political climate was con-

tradicted by a 1997 State Department country report and a 1998 State Department human rights report. The IJ concluded that Mr. Qari's claims of extortion and beatings constituted attacks by criminals seeking financial gain rather than acts of political persecution, and accordingly denied his applications for asylum, withholding of removal, and deferral of removal.

Mr. Qari appealed the IJ's ruling to the BIA, arguing only that the IJ's credibility ruling was incorrect and that the judge failed to apply the correct legal standard in addressing his asylum claim. Because the BIA adopted the IJ's ruling, *see* 8 C.F.R. § 1003.1(a)(7), we review the IJ's decision, reversing only if the ruling lacks substantial evidence to support the IJ's factual conclusions. *See Krouchevski v. Ashcroft,* 344 F.3d 670, 673 (7th Cir.2003). We review legal conclusions *de novo. See Ahmed v. Ashcroft,* 348 F.3d 611, 615 (7th Cir.2003).

## DISCUSSION

■ Mr. Qari first argues that the BIA should not have streamlined his case because the IJ's denial of asylum was incorrect and the factual and legal questions in his appeal were substantial. A single board member should not affirm an IJ's decision without opinion if, among other things, the member determines that the decision under review was not correct or that the factual and legal questions raised on appeal are substantial. *See* 8 C.F.R. § 1003.1(a)(7); *Georgis v. Ashcroft,* 328 F.3d 962, 966–67 (7th Cir.2003). But Mr. Qari's challenges make no practical difference here; we review the IJ's decision directly in a streamlined case, and given the direct review, "our ability to conduct a

full and fair appraisal of the petitioner's case is not compromised." *See Georgis,* 328 F.3d at 967.

■ Mr. Qari next challenges the IJ's decision to discredit his testimony. He argues first that the IJ should not have found that his testimony was undermined by his decision to not call his father as a witness because his father would not have had anything relevant to say. He next argues that the IJ should not have found that his testimony was contradicted by the State Department reports because those reports were outdated. We review an IJ's credibility determination deferentially, upholding it as long as it is supported by "specific, cogent reasons" that "bear a legitimate nexus to the finding." *See Krouchevski v. Ashcroft,* 344 F.3d 670, 673 (7th Cir.2003).

Regardless of Mr. Qari's specific challenges on appeal, he does not dispute one of the other independent bases relied upon by the IJ to discredit him—that during his INS interview Mr. Qari never stated a political basis for his alleged mistreatment. And an IJ may discredit an asylum applicant whose testimony contains multiple inconsistencies, such as differing explanations for leaving the home country. *See Oforji v. Ashcroft,* 354 F.3d 609, 613–14 (7th Cir.2003) (applicant properly discredited when she told INS interviewers that she was seeking asylum solely for economic reasons and then later testified that she fled because of government persecution for her political opinions). When Mr. Qari was asked during his INS interview at O'Hare about any government involvement in the alleged extortion and beating, his answer was that the government's only interest in him was for his taxes; he did not mention his own political activity or any political motivation for the attacks.*

---

* Mr. Qari admits that he understood the questions that he was asked during the INS inter-

view and that he provided truthful answers.

Yet political persecution was the basis for asylum that Mr. Qari advanced in his application. The IJ relied on these inconsistencies in discrediting Mr. Qari's testimony, and these "specific cogent reasons ... bear a legitimate nexus" to the denial of his claim. *See id.*

Mr. Qari also argues that the IJ erred by requiring him to show that it was "more likely than not" that he had a well-founded fear of future persecution. Mr. Qari is correct that an asylum applicant need only show that there was a "reasonable possibility" of persecution. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Ahmed,* 348 F.3d at 618. But, contrary to Mr. Qari's contention, the IJ applied the higher "more likely than not" standard only to Mr. Qari's request for withholding of removal, and then correctly stated that "the burden of proof for asylum is lower than that required for withholding of removal." *See Cardoza–Fonseca,* 480 U.S. at 440.

Finally, Mr. Qari also argues that his due process rights were violated because the IJ denied him a full and fair hearing by not allowing a witness to testify and by "articulating prejudice against Petitioner's use of the term 'Mafia' throughout the hearing." By not raising these arguments to the BIA, however, Mr. Qari has waived them. *See Sayaxing v. INS,* 179 F.3d 515, 522–23 (7th Cir.1999).

Mr. Qari's petition for review is DENIED.